# United States District Court
## For the Western District of North Carolina

In re:

**BK Racing, LLC**

     Debtor

**Ronald C. Devine,**
**Brenda S. Devine,**
**Randall Devine 2010 Irrevocable Trust,**
**Christopher Devine 2010 Irrevocable Trust,**
**Benjamin Devine 2010 Irrevocable Trust,**
**BRC Loans, LLC,**
**BRC Real Estate Holdings, LLC**
**A&R Foods, Inc.,**
**Virginia Racers Group, LLC,**
**Property Services, Inc.,**
**Us Financial Companies, LLC,**
**And Devine Family Foundation**

                            Appellants,

v.

**Matthew W. Smith,**
**Chapter 11 Trustee for BK Racing, LLC,**

                            Appellee.

---

On Appeal from the United States Bankruptcy Court
For the Western District of North Carolina
Bankruptcy Case No. 18-30241
Adv. Pro. No. 20-03014

---

Brief of Appellants, Ron Devine, et. al.

---

| | |
|---|---|
| William F. Kirk<br>#34390<br>Regent Law<br>1515 Mockingbird Lane, Ste. 4115<br>Charlotte, NC 28209<br>Will@RegentLawNC.com<br>704-315-2691 | Anthony Coppola<br>VA#74788<br>*Pro Hac Vice* Motion Pending<br>The Coppola Firm, PLC<br>218 North Lee St.<br>Third Floor<br>Alexandria, VA 22314<br>anthony@coppolaesquire.com<br>571-296-0549 |

# TABLE OF CONTENTS

Corporate Disclosure Statement ................................................................................i

Table of Contents ................................................................................................ ii

Table of Authorities ........................................................................................... iii

Jurisdictional Statement .......................................................................................1

Statement of the Issues and Standards of Review ...................................................2

Statement of the Case............................................................................................3

Summary of Argument...........................................................................................8

Argument...............................................................................................................9

    1.  The bankruptcy court erred in entering a default judgment as a matter of law. .........................................................................................9

    2.  The bankruptcy court erred by making evidentiary findings without a proper record.......................................................................15

    3.  The bankruptcy court erred in not considering the defendants individually. .........................................................................................19

Conclusion ..........................................................................................................23

Certificate of Compliance ...................................................................................24

i

# TABLE OF AUTHORITIES

## CASES

*Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808 (4th Cir. 1988) ....................................................................................11

*Belue v. Leventhal*, 640 F.3d 567 (4th Cir. 2011)....................................22

*In re Campbell*, 812 F.2d 1465 (4th Cir. 1987) ........................................2

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)........................15

*Catlin v. United States*, 324 U.S. 229 (1945) ............................................1

*Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570 (4th Cir. 1976).........................................................................................19

*In re County Green Ltd. Partnership*, 604 F.2d 289 (4th Cir. 1979) ...............19, 20

*DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681 (4th Cir. 1976).........................................................................................20

*Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572 (4th Cir. 2015).................15, 20

*Fletcher v. Bryan*, 175 F.2d 716 (4th Cir. 1949) .....................................22

*In re Frushour*, 433 F.3d 393 (4th Cir. 2005)............................................2

*Galvan v. Garland*, 6 F.4th 552 (4th Cir. 2021) ........................................2

*Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514 (S.D.N.Y. 1992) .....................17

*Hathcock v. Navistar Intern. Transp. Corp.*, 53 F.3d 36 (4th Cir. 1995)..........10, 13

*In re Higgs*, Adv. No. 12-01134, 2013 WL. 3791501 (Bankr. W.D. Tex. July 19, 2013) ...................................................................................16

*Jackson v. Beech*, 636 F.2d 831 (D.C.Cir.1980) .....................................10

ii

*In re Jemsek Clinic*, 850 F.3d 150 (4th Cir. 2017) ..............................................9, 12

*Keffer v. H.K. Porter Co., Inc.*, 872 F.2d 60 (4th Cir. 1989)....................................19

*Life Techs. Corp. v. Govindaraj*, 931 F.3d 259 (4th Cir. 2019) ..............................20

*Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951 (4th Cir. 1987) ..............................10

*Morse v. Lewis, 4 Cir.*, 54 F.2d 1027 (4th Cir. 1932)...............................................22

*Moviecolor, Ltd. v. Eastman Kodak Co.*, 288 F.2d 80 (2d Cir.1961).......................18

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88
    (4th Cir. 1989)....................................................................................................11

*Stearns v. Page*, 48 U.S. 819 (1849)........................................................................18

*U.S. v. Moradi*, 673 F.2d 725 (4th Cir. 1982)..........................................................14

*U.S. v. Shaffer Equipment Co.*, 11 F.3d 450 (4th Cir. 1993) ............................11, 12

*United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190 (4th Cir.
    2018) ...................................................................................................................18

*United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451
    (4th Cir. 2013)....................................................................................................18

*Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527 (4th Cir. 2013)...............19, 21

*Weidman v. Exxon Mobil Corp.*, 776 F.3d 214 (4th Cir. 2015) ..............................18

*Weinberger v. Retail Credit Co.*, 498 F.2d 552 (4th Cir.1974) ...............................18

*Willner v. Dimon*, 849 F.3d 93 (4th Cir. 2017)........................................................18

*Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir. 1977) ..................11

*Zervos v. S.S. Sam Houston*, 79 F.R.D. 593 (S.D.N.Y. 1978).................................14

iii

# STATUTES AND RULES

11 U.S.C. § 547(g) ...................................................................................16

28 U.S.C. § 157(a) ...................................................................................1

28 U.S.C. § 157(b) ...................................................................................1

28 U.S.C. § 158(a) ...................................................................................1

28 U.S.C. § 158(a)(1) ...............................................................................1

28 U.S.C. § 158(b) ...................................................................................1

28 U.S.C. § 158(c)(2) ...............................................................................1

28 U.S.C. § 1334(A) .................................................................................1

Fed. R. Civ. P. Rule 9 ..............................................................................17

Fed. R. Civ.P. Rule 52(a)(1) .....................................................................15

Fed. R. Bank. P. Rule 7009 ......................................................................17

Fed. R. Bank. P. Rule 7052 ......................................................................15

Red. R. Bank. P. Rule 8002 ......................................................................1

# OTHER AUTHORITIES

4A James W. Moore et al., Moore's Federal Practice ¶ 34.17 at 34-68 .................17

8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL
    PRACTICE & PROCEDURE Sec. 2291, at 718-20........................................12

Case 3:23-cv-00001-FDW   Document 5   Filed 03/02/23   Page 5 of 29

## Jurisdictional Statement

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(a) and (b), and 1334(a), to issue its *Order Granting Plaintiff's Renewed Motion to Compel and Imposing Sanctions, Including Striking Defendants' Answer and Entering Default Judgment* entered on August 23, 2022 [Doc. 81] and its *Order Granting Default Judgment* dated December 19, 2022 [Doc. 96]. That order was a final order. *See Catlin v. United States*, 324 U.S. 229, 233 (1945). Devine filed a *Notice of Appeal* on January 2, 2023, which is timely under 28 U.S.C. §§ 158(a) and (c)(2) and Rule 8002 of the Federal Rules of Bankruptcy Procedure. This court has appellate jurisdiction under 28 U.S.C. §§ 158(a)(1) and (b).

**Statement of the Issues and Standards of Review**

1) Whether the bankruptcy court erred by entering a default judgment, finding Ron Devine in contempt, and granting the plaintiff's protective order.

   **Standard of Review:** The ultimate judgment of a bankruptcy case is reviewed *de novo*. *In re Campbell*, 812 F.2d 1465, 1466 (4th Cir. 1987).

2) Whether the bankruptcy court erred in entering a default judgment as a matter of law.

   **Standard of Review:** Matters of law are reviewed *de novo*. *In re Frushour,* 433 F.3d 393, 398 (4th Cir. 2005).

3) Whether the bankruptcy court erred in making evidentiary findings.

   **Standard of Review:** This issue is about the method that the Bankruptcy Court used to make factual findings. Thus, it is a mixed issue of law and fact. Courts "review de novo the application of those facts to the statutory legal standard." *Galvan v. Garland*, 6 F.4th 552, 561 (4th Cir. 2021).

4) Whether the bankruptcy court erred in not considering the defendants individually.

   **Standard of Review:** Matters of law are reviewed *de novo*. *In re Frushour,* 433 F.3d at 398.

**Statement of the Case**

Ron Devine is a successful entrepreneur who built and ran dozens of businesses over 35 years. For 30 years, he employed approximately 750 people. This case is the first time he or any of his businesses has been forced to declare bankruptcy. In 2011, he became involved in NASCAR. Devine never owned a NASCAR team directly.

Devine did successfully manage the team for several years racking up a series of accomplishments. BK Racing qualified 4 cars in the 2016 Daytona 500. It finished 6th in the Bristol Race in 2016. It won the Open Division in 2017. The team had multiple finishes in the top 25, top 20, top 15, and top 10. BK Racing entered about 300 races and had over 500 starts at the Cup level. It was ranked the 10th most valuable NASCAR Cup team in 2016 by Forbes. (https://www.forbes.com/teams/bk-racing/?sh=1f9376915aca). Forbes analyzed on the entire cup division and ranked them by value. BK racing was worth $24 million. *Id.*

Unfortunately, Atlantic Union Bank and Trust attempted to put the team into receivership. [Doc. 81 Pp. 4-5]. As an entrepreneur, Ron Devine was used to solving business problems himself. He filed for a voluntary petition for Chapter 11 relief for the team on February 15, 2018. [Doc. 1 P. 4]. Devine also attempted to represent himself and his businesses *pro se*. Representing his businesses was

3

disallowed by the court. While still *pro se*, Ron Devine produced two and a half banker's boxes of documents as part of the Base Case on August 9, 2019. [Doc. 81 P. 9].

As proceedings continued, the court chastised Devine because he "was in Daytona and much more concerned with racing than addressing legal requirements or attending court hearings." [Doc. 81 P. 5]. On March 30, 2018, the court appointed Matthew W. Smith as bankruptcy trustee. [Doc. 81 P. 7].

Smith had no experience running a NASCAR team and was a first-time trustee. While Devine was chastised for attempting to continue racing. Smith began running laps outside competition to keep from defaulting on their NASCAR charter. The team's NASCAR charter was its single most valuable asset, but the team had to keep racing to retain it. Rather than run weekly laps Smith sought to sell the business. Instead of protecting this asset like Devine did, on August 24, 2018, Smith gained the court's permission to sell it along with the rest of BK Racing's assets. [Doc. 81 Pp. 7-8]. Since this sale was mid-season for NASCAR, the Charter was sold for pennies on the dollar. By his own admission, Smith's strategy of liquidating the company left the estate with liabilities of between $5.3 Million and $19.2 Million. [Doc. 1 P. 6].

At this point, Smith (wanting a deep pocket) decided to go after Ron Devine and his friends and family for the money. On February 14, 2020, Smith filed suit

against Devine, his wife, his mother[1], and 10 businesses, trusts, and a charity. [Doc. 1]. From the beginning, Smith called the Defendants structure "byzantine." [Doc. 1 P. 19]. Smith never spelled out what the alleged "byzantine" structure looked like or how money flowed. When pressed by Defendants, Smith characterized them as "vexatious and obstreperous." [Doc. 24 P. 2]. Smith would repeat these words over and over.

The amounts that Smith attempted to connect to the Devines were quite modest. Smith alleged that Brenda Devine received $57,500 in payments from BK Racing accounts. [Doc. 1 P. 13]. Ron Devine was accused of receiving $20,300. [Doc. 1 P. 14]. These amounts were not enough for Smith, so he attempted to go after 10 businesses, trusts, and a charity related to the Devines. Smith accused the defendants of "alter ego" and fraud. Smith failed to explain either of these accusations or plead them in particularity. He could not explain how the money flowed or how the businesses were connected. Instead, he claimed that $6.4 million had been siphoned off by a "byzantine" series of entities. Smith would reiterate his allegations of a "byzantine" structure frequently. *See E.G.* [Doc. 39 P. 2] [Doc. 48 P. 3].

─────────────────────

[1] Carol Devine was eventually dropped from the case as the claim against her was just over $5,000.

Unable to explain what exactly the "byzantine" structure looked like, Smith became focused on discovery—specifically discovery sanctions. Smith himself possessed tremendous documentation of the debtor. He produced roughly 900,000 pages of documents in discovery. Despite his already extensive cache of documents, many of which were produced by Devine, Smith requested 1002 documents to be produced and alleged 16 causes of action. [Doc. 58 P. 8].

Then the sanctions started. On June 15, 2021, Smith moved to hold Ron Devine in contempt for failing to disclose a self-settled spendthrift trust called BRBRC. [Doc. 22]. This alleged failure related to the 2004 subpoena in the base case, not the adversarial proceeding. It occurred when Devine was still not represented by counsel. Nonetheless, the judge held Ron Devine in civil contempt for information about a self-settled post-petition trust.

Defendants continued production but were continuously chastised by Smith. Smith complained that he already had many of the documents produced by Defendants. He ignored, however, that they were in his 900,000 page horde of documents because they were already produced by Ron Devine during the Base Case. [Doc. 58 P. 8].

Smith complained about unanswered interrogatories. He served 269 interrogatories on the Defendants. The court found that only 38 were not answered

sufficiently. About 86% of the interrogatories were sufficiently answered. [Doc. 81 P. 17-18].

Smith filed a second motion to compel on August 25, 2021. [Doc. 39]. On October 12, 2021, the court held Devine in civil contempt and issued an order to compel discovery. [Doc. 43] [Doc. 44].

On December 22, 2021, Smith moved for a default judgment as a Discovery sanction. [Doc. 57]. The court ultimately granted the motion in its 70-page *Order Granting Plaintiff's Renewed Motion to Compel And Imposing Sanctions, Including Striking Defendants' Answer And Entering Default Judgment*. [Doc. 80] [Doc. 81].

Just as he inflated the $20,300 owed by Ron Devine to $6.4 million, Smith used the default judgment to further increase the amount owed. He also used the non-evidentiary nature off a default to pierce the corporate veil without analysis. And on December 19, 2022, the court entered a default judgment of $31,094,099.89 jointly and severably against the Defendants. [Doc. 96]. If the Plaintiff's accounting is correct, this amount is $25.8 million more than the total debts of the bankruptcy estate. Most of the money would be owed to the Defendants, not creditors.

This appeal timely followed.

## Summary of the Argument

**1)  The bankruptcy court erred in entering a default judgment as a matter of law.**

Entering a default judgment was inappropriate as a matter of law.  Default judgement is strongly disfavored as a policy matter because it stifles Due Process.  In this case, the amount in controversy is too large for a default judgment.  More than 100 documents make up the record of the case.  And the alleged discovery failings that underpinned the default were not severe enough to justify a default.  Moreover, the judge applied the wrong test to determine whether default was appropriate.

**2)  The bankruptcy court erred by making evidentiary findings without a proper record.**

An adversarial proceeding is required by Due Process.  In this case, there was no proper adversarial proceeding because of the default.  But despite the lack of an adversarial record, the court considered facts outside the scope of what was appropriate.  The court failed to properly apply the burden of proof and ignored pleading deficiencies by the Plaintiff.

**3)  The bankruptcy court erred in not considering the defendants individually.**

The court erred by ignoring the separate rights and existence of the Defendants.  The court did not do a proper alter ego analysis, but simply

considered all the Defendants together as though they were one person.  The court

considered evidence outside the record.  It considered information from the Base

Case and from other related cases.

## Argument

### 1.  The bankruptcy court erred in entering a default judgment as a matter of law.

In a case with a $31 million plus judgment, a record of over 100 documents,

and twelve Defendants, default judgment is inappropriate.  The sheer size of the

judgment is prohibitive for a default sanction.  The Fourth Circuit has reversed the

same judge who decided this case making it clear that a $10 million sanction is

"unduly severe" and must fail even if bad faith exists.  *In re Jemsek Clinic,* 850

F.3d 150, 159, 150 (4th Cir. 2017) ("[The bankruptcy court] dismissed with

prejudice claims that the creditor valued at over $10 million, and it ordered the

creditor to pay the debtor $1.29 million in attorneys' fees and costs. Although the

bankruptcy court did not clearly err in finding that the creditor acted in bad faith,

these sanctions were excessive.").  In this case, the size of the sanction exceeds $31

million, more than three times the sanction the Fourth Circuit rejected in *Jemsek*.

Plaintiff's payment range is so broad it's not a sum certain.  Even the

Plaintiff estimates the total liabilities of the estate as between approximately $5.3

Million and $19.2 Million. [Doc. 1 P. 6].  There is a $13.9 million window of

uncertainty in Plaintiff's calculations. The bankruptcy court awarded far more than the total liabilities of the bankruptcy estate with a $31,094,099.89 default judgment. [Doc. 96 P.3]. By the Plaintiff's own admission, the court entered a judgment of between $11.9 million and $25.8 million more than the total liabilities of the bankruptcy estate. Those Defendants who have equity in the company would essentially have a multimillion-dollar judgment against them to make them pay themselves.

There is a strong policy against entering a default judgment. The Fourth Circuit has made clear that a default judgment as a discovery sanction is an extreme remedy. The scope of discretion to enter a default judgment is narrow in cases short of total non-responsiveness. *Hathcock v. Navistar Intern. Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995).

"[A]n abuse of discretion in refusing to set aside a default judgment 'need not be glaring to justify reversal.'" *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (*quoting Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir.1980)). In this case, the record contains more than 100 documents. The Defendants expended substantial time and money making their case. Default robs them of their day in court.

In this case, the judge used the wrong test to balance the entry of a default judgment against the Defendants' right to have their day in court. The Fourth Circuit has long held that entering a default judgment as a discovery sanction is "'an infringement upon a party's right to trial by jury under the seventh amendment' and runs counter to 'sound public policy of deciding cases on their merits,' and against depriving a party of his 'fair day in court.'" *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 504 (4th Cir. 1977).

Here the court cited the 1989 case *Mut. Fed. Sav. & Loan Ass'n* for the factors to judge if a default sanction was appropriate. *Mut. Fed. Sav. & Loan Ass'n* in turn cited *Wilson* for the four factor test the court used.

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (Citing *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503-06 (4th Cir. 1977)). *See* [Doc. 81 P. 62].

The court found all the *Wilson* Factors ran against the Defendants. But *Wilson's* four factor test is no longer current precedent.

In the years since 1977, the Fourth Circuit has taken a liberal view on relieving parties of default judgment. *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988). In the 1993 case *Shaffer* the

11

Fourth Circuit expanded on the limits of extreme sanctions in the case of a dismissal. *U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 462-63 (4th Cir. 1993). The issue remains the same—balancing the right to a trial with the need to sanction. *Id.* In *Shaffer*, the Fourth Circuit set out a six-part test:

> [B]efore exercising the inherent power to dismiss a case, a court must consider the following factors: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. *Id.*

In *Shaffer*, bad faith was found, just as it was found here. But the court determined that the public interest of having a fair trial won the day for policy reasons. In the 2017 case *Jemsek*, the court reiterated the validity of *Shaffer's* six-part test. *In re Jemsek*, 850 F.3d at 150 (4th Cir. 2017). The court also reiterated that there is a strong public policy interest to decide cases on the merits even in the event of bad faith. *Id.* Here, the court even cited *Jemsek*, but failed to apply the correct test. [Doc. 43 P. 7].

The public interest strongly favors deciding cases on the merits. A partial failure to answer Interrogatories is not sufficient grounds to enter a default judgement. *See* 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus,

FEDERAL PRACTICE & PROCEDURE Sec. 2291, at 718-20 (collecting cases establishing that Rule 37(d) is inapplicable in the absence of a 'serious or total failure to respond to interrogatories'). Actual and significant prejudice on the moving party is a necessary part of the analysis for entering a default. *Hathcock*, 53 F.3d at 40-41 (4th Cir. 1995) (noting that prejudice is limited when party seeking discovery has at least some knowledge of the alleged materials to be discovered).

Here prejudice of Plaintiff was minimal. Plaintiff showed through his discovery responses that he possessed nearly a million pages of documents. He provided 900,000 pages in discovery. That number alone makes a showing of prejudice nearly impossible.

Moreover, the discovery that the Plaintiff received was not a "total failure to respond." In this case, the court found that Defendants had produced 3,941 emails and A&R Foods alone produced 2,965 pages. [Doc. 81 Pp. 36, 40]. The bankruptcy court found that some interrogatories were insufficiently answered, but the failing was largely corrected. [Doc. 81 P. 17]. Of the 269 interrogatories served on the Defendants, the court found that only 38 were not answered sufficiently. [Doc. 81 P. 17-18]. About 86% of the interrogatories were sufficiently answered, a far cry from a total failure to respond. Plaintiff even knew

about BRBRC.  He won a contempt motion for failure to disclose BRBRC, but he was not prejudiced because he had actual knowledge of the trust.

As has been shown, bad faith is not sufficient to justify a default.  But the finding of bad faith was inappropriate here.  A default judgment is inappropriate when the party is blameless.  *U.S. v. Moradi*, 673 F.2d 725, 728 (4th Cir. 1982) (finding that party's lawyer was at fault for discovery failings).  Here the court stated, "It is inconceivable that Ron Devine, the obligor on these loans and the person who controlled the new guarantor, BK Racing, could be so ill informed." [Doc. 81 P. 33].

Ron Devine has been in business for 35 years.  His goal has been to make money, not to establish a documentary record for litigation.  The court made a finding that a lack of documentation equated a culpability to deceive.  But sloppiness in record keeping is not sufficient to show culpability to deceive. "Under ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one 'cannot be required to produce the impossible.'" *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978).

Overall, the Fourth Circuit has taken a view that the sanction of default is strongly disfavored for policy reasons.  It is not to be entered in cases with large sums of money at stake, cases with partial discovery, or cases where the opposing

party is not fully prejudiced by lack of evidence.  Here the judge used the wrong test and came to the wrong conclusion.

### 2. The bankruptcy court erred by making evidentiary findings without a proper record.

Due Process requires an adversarial proceeding to make findings of fact. "To be sure, '[a] fair trial in a fair tribunal is a basic requirement of due process.'" *Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 591 (4th Cir. 2015) (*citing Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876, (2009)).  "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately."  52(a)(1) F.R.Civ.P. made applicable by Bankruptcy Rule 7052.

Here the problem is not what facts were found, which would require a clearly erroneous standard of review.  The problem is the method by which facts were found was not sufficient to provide Due Process, which requires a *de novo* review.

It is plainly true that in entering a default, the court did not provide an adversarial proceeding.  But the court did make factual findings, which it should not have.  Despite the lack of an adversarial proceeding, the court found that, "On the substantial evidentiary record presented, it appears more likely that it is the Defendants who have conjured up a narrative—one to justify the millions of

dollars that flowed back and forth between BK Racing, themselves, and the Related Case Defendants." [Doc. 81 P. 51]. The court both issued a default for lack of discovery and found that a "substantial evidentiary record" existed.

Plaintiff's claim must fail because he failed to meet his burden of proof. "For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section."11 U. S. C. § 547(g).

Despite the bankruptcy court's extensive factual findings, it ruled that "for several causes of action, particularly, the state law claims, Smith arguably has the burden of proof. Without discovery, he will be hard pressed to meet his burden." [Doc. 81 P.68]. This finding ignores the 900,000 pages of records that Plaintiff had possession of. It also ignores the thousands of pages that Defendants produced. The Plaintiff has the burden and has simply failed to meet it.

In an instructive case, the Debtor filed a *Pro Se* Answer, but filed no further pleadings and did not appear in court. *In re Higgs*, Adv. No. 12-01134, 2013 WL 3791501 (Bankr. W.D. Tex. July 19, 2013). The court ruled that the movant still had to meet their burden. *Id*.

"In the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion." *Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992) (citing 4A James W. Moore et al., Moore's Federal Practice ¶ 34.17 at 34–68 to 69 (2d ed. 1992) ("A party who denies under oath that the requested documents exist, or that they are within his custody or control, may not be compelled to produce them").

In addition to failing to meet his burden of proof, Plaintiff failed to plead his claims with the required particularity. Even with the Answer struck, Plaintiff's counts that require particularity pleadings cannot go forward.

Here, five claims are based on fraud. Fraud was also the grounds for trebling damages. Claims 2, 7, 8, 9 and 10 allege fraud both actual and constructive. But none, however, alleges any a false statement. P. 22-28. The claims simply state that fraud occurred. The Complaint states that the Defendants were "a complex web of interrelated companies." [Doc 1 P. 21]. Though Plaintiff gives examples, Plaintiff does not spell out what the web looks like or how it works.

Fraud must be plead in particularity. Fed. R. Civ. P. Rule 9 as made applicable Under Bankruptcy Rule 7009. In cases of alleged fraud, plaintiffs have the burden of putting defendants on notice sufficient to enable a particular defendant to know what they have been charged with.

17

Generally a complaint will survive 12(b)(6) if it is plausible on its face, but in the case of fraud a higher standard is required. *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 196 (4th Cir. 2018). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013).

The requirements of the particularity pleading in the case of alleged fraud "are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) *See also Willner v. Dimon*, 849 F.3d 93 (4th Cir. 2017).

"Even under modern liberal rules of pleading 'justice' still requires that a plaintiff seeking to escape the statute in such a case shall make 'distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been before made.'" *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir.1974) (*quoting Moviecolor, Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 88 (2d Cir.1961) (*quoting Stearns v. Page*, 48 U.S. 819, 829 (1849)).

Plaintiff has failed to properly allege the facts necessary to constitute a valid pleading. A plaintiff must plead distinctly the facts necessary to show the essential elements of fraud. *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 574 (4th Cir. 1976). Due to this failure, even with the Answer struck the Complaint must fail.

### 3. The bankruptcy court erred in not considering the defendants individually.

The bankruptcy court pierced corporate veils in an improper omnibus manner. "Whether the corporate veil should be pierced is necessarily a factual inquiry to be conducted on a case-by-case basis." *Keffer v. H.K. Porter Co., Inc.*, 872 F.2d 60, 65 (4th Cir. 1989). Here the court did not analyze the facts, it just treated all Defendants as one. The court summarily concluded that "the twelve are but a married couple (the Devines), their six wholly owned corporate entities and four family trusts." [Doc. 81 P. 23]. Each of the defendants should have received a separate analysis as they are separate and distinct parties. *See In re County Green Ltd. Partnership*, 604 F.2d 289, 292 (4th Cir. 1979).

Veil Piercing is a disfavored and fact dependent action. "At its core, the, the question of whether to pierce the corporate veil is a fact-intensive inquiry[.]" *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 544 (4th Cir. 2013).

Even if veil piercing were appropriate here, it was done in the wrong manner. Each connection of ownership or benefit should have been specifically drawn out. Simply ignoring each Defendant's separateness is inappropriate. The actual relationships and flow of money must be spelled out.

Due Process dictates that a person accused of using corporate form as an alter ego must be given an opportunity to be heard at a meaningful time. *Life Techs. Corp. v. Govindaraj*, 931 F.3d 259, 265 (4th Cir. 2019). "We first note the general rule that the decision to pierce a corporate veil and expose those behind the corporation to liability is one that is to be taken reluctantly and cautiously." *In re County Green Ltd. Partnership*, 604 F.2d 289, 292 (4th Cir. 1979) (*quoting DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685 (4th Cir. 1976)).

The Complaint fails to individually identify which Defendants are responsible for which counts. This is a fatal failure. "Although the corporate form ordinarily prohibits one entity from being liable for the acts of a separate, though related, entity, courts will pierce the corporate veil in 'extraordinary circumstances,' such as when the corporate form is being used for wrongful purposes. The standard for piercing the corporate veil is high, but its purpose is to 'achieve an equitable result' by 'focus[ing] on reality and not form, on how the corporation operated and the individual defendant's relationship to that operation.'" *Flame S.A. v. Freight*

*Bulk Pte. Ltd.*, 807 F.3d 572, 587 (4th Cir. 2015) (citation omitted) (citing *Vitol*, 708 F.3d at 543-44 (4th Cir. 2013).

More specificity is required for veil piercing. Limited liability may be waived, but that is not the same as considering all the Defendants as a group. Rather, veil piercing allows one to follow the channels by which liability is normally blocked. Plaintiff still must plead the specific flow of money, especially on fraud counts.

The allegations for allowing veil piercing are not sufficient as a matter of law. They consist mainly of loans to and from various businesses and individuals—some of which are disputed as to whether they are truly loans. "But it has effectively alleged nothing more than repaid loans and dividend distributions, which do not establish the type of dominion and control needed to demonstrate alter ego status." *Vitol,* 708 F.3d at 546 (4th Cir. 2013).

Another major problem with the court's findings is that it considered evidence outside of the record. It considered both evidence from the Base Case and evidence from related cases. "The general rule undoubtedly is that a court will not travel outside the record of the case before it in order to take notice of the proceedings in another case, even between the same parties and in the same court, unless the proceedings are put in evidence; and the rule is sometimes enforced with

considerable strictness." *Fletcher v. Bryan*, 175 F.2d 716, 717 (4th Cir. 1949) (*citing Morse v. Lewis*, 4 Cir., 54 F.2d 1027, 1029 (4th Cir. 1932)).

But here the judge did just what the Fourth Circuit proscribed. He considered outside evidence on numerous occasions. The court considered evidence from the Base Case against Defendants. "These failures are in addition to several past failures to provide information and documentation in the base bankruptcy case…" [Doc. 81 P. 60].

The court also held actions made by other defendants in another case against Defendants in this case. "This callow suggestion is being simultaneously advanced by the other Related Case Defendants, and the motivation is clear. In fact, it was expressed at a discovery compliance hearing in the DiSeveria case on May 31, 2022." [Doc. 81 P. 58]. A party is prejudiced when a judge rules from information learned outside of the case at bar. *Belue v. Leventhal*, 640 F.3d 567, 573-74 (4th Cir. 2011).

**Conclusion**

For the reasons set forth above, the decision and order of the bankruptcy judge should be set aside.

| /s/ Anthony Coppola | /s/ William F. Kirk |
|---|---|
| Anthony Coppola<br>VA#74788<br>*Pro Hac Vice* Motion Pending<br>The Coppola Firm, PLC<br>218 North Lee St.<br>Third Floor<br>Alexandria, VA 22314<br>anthony@coppolaesquire.com<br>571-296-0549 | William F. Kirk<br>#34390<br>Regent Law<br>1515 Mockingbird Lane, Ste. 4115<br>Charlotte, NC 28209<br>Will@RegentLawNC.com<br>704-315-2691 |

23

## Certificate of Compliance

This document complies with the type-volume limit of 11 U.S.C. §

8015(a)(7)(B) excluding the parts of the document exempted by 11 U.S.C. §

8015(g) This document contains 5,289 words, counted by Microsoft Word.


/s/ William F. Kirk

William F. Kirk
#34390
Regent Law
1515 Mockingbird Lane,
Ste. 4115
Charlotte, NC 28209
Will@RegentLawNC.com
704-315-2691


/s/ Anthony Coppola

Anthony Coppola
VA#74788
Attorney for Appellants
The Coppola Firm, PLC
218 North Lee St.
Third Floor
Alexandria, VA 22314
anthony@coppolaesquire.com
571-296-0549