UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00001-FDW

| RONALD C. DEVINE et al, | ) |  |
|---|---|---|
| Appellants, | ) | |
| v. | ) | **ORDER** |
| MATTHEW W. SMITH, | ) | |
| Appellee. | ) | |

**THIS MATTER** is before the Court on appeal of Ronald C. Devine; Brenda S. Devine; Randall Devine 2010 Irrevocable Trust; Christopher Devine 2010 Irrevocable Trust; Benjamin Devine 2010 Irrevocable Trust; BRC Loans, LLC; BRC Real Estate Holdings, LLC; A&R Foods, Inc.; Virginia Racers Group, LLC; Property Services, Inc.; US Financial Companies, LLC; and Devine Family Foundation ("Appellants") from the judgment entered in the bankruptcy court case of <u>In Re BK Racing, LLC</u>, Case. No. 18-30241 (Doc. No. 1-4), the order granting Matthew W. Smith's ("Appellee") renewed motion to compel and imposing sanctions (Doc. No. 1-3), the order holding Appellant Ronald Devine in civil contempt (Doc. No. 1-1), and the order granting Appellee's motion for protective order and denying Appellants' motion to compel (Doc. No. 1-2). This matter has been fully briefed, (Doc. Nos. 5, 8, 9, 11), and is ripe for ruling. For the reasons set forth below, the Orders of the bankruptcy court are AFFIRMED.

## I.  BACKGROUND

On February 15, 2018, BK Racing, LLC filed a petition for relief under chapter 11 of the United States Bankruptcy Code. (Doc. 1-3, p. 4–5.) BK Racing was indirectly owned by the Devines through their majority equity interest resulting from ownership of Appellant Virginia

1

Racers Group. (Doc. No. 1-4, p. 4.) At the time, Appellant Brenda Devine was the managing member while Appellant Ronald Devine, her husband, controlled the day-to-day operations. (Id.) While the Devines had control over BK Racing, BK Racing failed to file the required bankruptcy schedules resulting in the concealment of millions of dollars of transfers to Appellants. (Doc. 1-3, p. 5–6.) Emails between Appellant Ronald Devine and counsel for BK Racing ultimately showed the Devines did not want to disclose prepetition transfers made to "insiders" because they did not want to provide "the enemies anymore ammo." (Doc. No. 1-3, p. 6.)

On March 30, 2018, Appellee was appointed to serve as the Chapter 11 trustee and was later appointed as the sole manager of BK Racing. (Id.) Although bankruptcy laws required management to turn over BK Racing's records to Appellee, no voluntary production was made. (Doc. No. 1-3, p. 7.) In fact, Appellant Ronald Devine threatened in an email to "let the lawyers fight forever" if Appellee took the creditors' side in the case. (Id.)

On May 1, 2019, the bankruptcy court authorized Appellee to conduct discovery pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. (Doc. No. 1-3, p. 8.) Appellee served subpoenas *duces tecum* on Appellant Ronald Devine, Appellant Brenda Devine, and several of the closely held corporate Appellants. (Id.) Through a series of objections and motions for protective orders, Appellant Ronald Devine opposed the subpoenas on behalf of himself and all other Appellants. (Id.) The bankruptcy court overruled the objections, denied the requested protective orders, and disallowed Appellant Ronald Devine from representing other parties. (Id.) Following more objections and noncompliance by Appellants, on August 9, 2019, "two and one-half banker's boxes of documents" were provided to Appellee by the Devines on behalf of all parties. (Doc. No. 1-3, p. 9.) This production failed to include many documents the bankruptcy court ordered to be produced. (Doc. 1-3, p. 9–10.)

On December 13, 2019, Appellee proposed a liquidating Chapter 11 Plan in the bankruptcy case. (Doc. No. 1-3, p. 10.) The plan was ultimately supported by all creditors, with the only negative vote arising from Appellant Ronald Devine who alleged loaning $17 million to BK Racing. (Id.) Appellant Ronald Devine's objection was found to be meritless, and the plan was confirmed. (Doc. No. 1-3, p. 11.)

On February 14, 2020, Appellee initiated the adversary proceeding in the bankruptcy court alleging "the Devines operated [BK Racing] and the other Appellants as part of a byzantine web to siphon off at least $6.4 million from [BK Racing]." (Doc. No. 8, p. 10.) In total, the Complaint asserted fifteen causes of action for avoidance and recovery of fraudulent transfers, breach of fiduciary duty, unfair trade practices and alter ego liability, among others. Because Appellant Ronald Devine insisted the IRS participate in mediation despite not being a party, months of delay ensued. (Doc. No. 1-3, p. 12.) On March 23, April 6, and April 27, 2021, the bankruptcy court held status and scheduling hearings and expressly warned noncompliance in discovery could result in default judgments and striking pleadings. (Doc. No. 1-3, p. 12–13.) The bankruptcy court also set a firm discovery deadline of September 30, 2021. (Doc. No. 1-3, p. 13.)

In May 2021, Appellee learned of an irrevocable self-settled spendthrift trust, the BRBRC Trust, formed by the Devines in 2018 after Appellant Ronald Devine lost control of BK Racing. (Id.) Appellee issued a subpoena *duces tecum* to the BRBRC Trust; however, the trust refused to respond. (Id.) Seeing as the bankruptcy court had previously ordered the Devines to disclose trust documents, Appellee filed a motion to hold Appellant Ronald Devine in contempt for willfully violating the prior discovery order. (Doc. No. 1-3, p. 13–14.) At an evidentiary hearing, the bankruptcy court again warned of the potential consequence of default judgment if discovery was not complied with, and Appellant Ronald Devine was held in civil contempt. (Doc. No. 1-3, p. 14.)

Between June 28–30, 2021, Appellants served their written responses to Appellee's discovery requests. (Doc. No. 1-3, p. 15.) Appellant Ronald Devine signed his responses as well as the responses of the corporate Appellants. (Id.) Appellant Brenda Devine signed her responses and the responses from the trust Appellants. (Id.) All Appellants objected to most, if not all, of Appellee's discovery requests and few answers were provided. (Id.) After a hearing, the bankruptcy court found Appellants' answers insufficient and directed Appellants to fully respond. (Doc. No. 1-3, p. 17.) Appellants were also ordered to produce all responsive documents by October 12, 2021. (Id.)

Ultimately, Appellants failed to comply with the discovery order by the deadline. In response, Appellee filed a report outlining Appellants' discovery failures and sought sanctions pursuant to Rule 37(b)(2). (Doc. No. 1-3, p. 21.) Specifically, Appellee sought Appellants' answers be stricken, default judgment be entered, and his costs and attorneys' fees be covered. (Id.) In response, Appellants argued they attempted to comply with the discovery orders in good faith; the bankruptcy estate was not harmed by alleged noncompliance; Appellants should not be defaulted because they have meritorious defenses; and default would be too harsh a penalty. (Doc. No. 1-3, p. 21–22.)

On January 5 and 31, 2022, the bankruptcy court conducted evidentiary hearings on the motion for default. (Doc. No. 1-3, p. 22.) The bankruptcy court subsequently granted the motion entering default judgment against Appellants for more than $31 million. On January 3, 2023, Appellants noticed appeal to this Court appealing four orders of the bankruptcy court: the judgment entered (Doc. No. 1-4), the order granting Appellee's renewed motion to compel and imposing sanctions (Doc. No. 1-3), the order holding Appellant Ronald Devine in civil contempt (Doc. No.

4

1-1), and the order granting Appellee's motion for protective order and denying Appellants' motion to compel (Doc. No. 1-2).

## II. STANDARD OF REVIEW

This appeal is brought pursuant to 28 U.S.C. § 158(a) and Rule 8001 of the Federal Rules of Bankruptcy Procedure. The district court may affirm, modify, or reverse a bankruptcy judge's order, or remand with instructions for further proceedings. See 28 U.S.C. § 158(a); Fed. R. Bankr. P. 8001, 9002(2). When considering an appeal from the bankruptcy court, this Court is bound to review the bankruptcy court's "legal conclusions de novo, its factual findings for clear error, and any discretionary decisions for abuse of discretion." Copley v. United States, 959 F.3d 118, 121 (4th Cir. 2020).

This Court "review[s a trial court's] grant or denial of a civil contempt motion for abuse of discretion. JTH Tax, Inc. v. H&R Block Eastern Tax Services, Inc., 359 F.3d 699, 705 (4th Cir. 2004). The entry of a protective order is similarly reviewed for abuse of discretion. See Fonner v. Fairfax Cnty., Va, 415 F.3d 325, 330 (4th Cir. 2005). As to whether a bankruptcy court errs in imposing sanctions, this Court's review on appeal is under the abuse of discretion standard. In re Jemsek Clinic, P.A., 850 F.3d 150, 156 (4th Cir. 2017) ("We review the bankruptcy court's sanctions order for abuse of discretion."); see also Copley, 959 F.3d at 121 ("In reviewing the judgment of a district court sitting in review of a bankruptcy court, we apply the same standard of review that was applied by the district court."). A court finds abuse of discretion only where a bankruptcy court's "conclusions are based on mistaken legal principles or clearly erroneous factual findings." Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 311 (4th Cir. 2020) (citations and quotations omitted). "[T]he decision of the bankruptcy court [to pierce the

corporate veil] should not [be] reversed unless it was clearly erroneous." In re County Green Ltd. Partnership, 604 F.2d 289, 292 (4th Cir. 1979).

### III. DISCUSSION

Appellants present four issues on appeal: (1) "Whether the bankruptcy court erred by entering a default judgment, finding Ron Devine in contempt, and granting the plaintiff's protective order;" (2) "Whether the bankruptcy court erred in entering a default judgment as a matter of law;" (3) "Whether the bankruptcy court erred in making evidentiary findings;" and (4) "Whether the bankruptcy court erred in not considering the defendants individually." (Doc. No. 5, p. 7). Appellants contend each issue presented is reviewed under the *de novo* standard. They are not. While Appellants assert Appellee "[c]reat[ed] new issues" "[t]o get a more favorable standard of review", (Doc. No. 11, p. 5), it is Appellants who crafted the issues in an attempt to obtain an improper standard of review.[1] Thus, the Court will address the issues raised by Appellant as they arise in reviewing each of the bankruptcy court orders appealed.

**A.    Order Holding Ronald C. Devine in Civil Contempt**

Though Appellants provided this Court with notice of appeal from the bankruptcy court's Order Holding Ronald C. Devine in Civil Contempt, (Doc. No. 1, p. 2), they failed to address it in their briefings to this Court. Nevertheless, the Court will review the bankruptcy court's Contempt Order for abuse of discretion because it is highly relevant to the subsequent orders imposed by the bankruptcy court.

A bankruptcy court has the authority to find civil contempt. In re Walters, 868 F.2d 665, 669 (4th Cir. 1989) (stating "a court of bankruptcy has authority to issue any order necessary or

---

[1] For example, Appellants characterize entry of default judgment by the bankruptcy court as the "ultimate judgment" in their brief to this Court. (Doc. No. 5, p. 7.) However, in a hearing before the Bankruptcy Court, counsel for Appellants stated, "As it relates to the default judgment . . . it's not, technically, under Rule 55, but it was more of the discovery sanction." (Doc. No. 9, p. 70.)

6

appropriate to carry out the provisions of the bankruptcy code," and affirming an order holding the debtor in civil contempt). "[T]he delegation of civil contempt power to the bankruptcy courts by 11 U.S.C. § 105(a) does not offend the Constitution." Id. at 670. To establish civil contempt, the following elements must be found by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) … that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and (4) . . . that [the] movant suffered harm as a result.

JTH Tax, Inc., 359 F.3d at 705 (quoting Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000)).

During the bankruptcy proceedings, Appellant Ronald Devine was served with a subpoena directing him to produce "[a] list of any and all family trusts you have established including trusts for the benefit of your children and copies of the trust documents" and "[c]opies of Federal Tax returns for family trusts". (Bankr. W.D.N.C. 18-30241, Doc. No. 308, p. 8.) Appellant Ronald Devine objected twice to the subpoena, which the bankruptcy court overruled on each occasion. (Bankr. W.D.N.C. 18-30241, Doc. Nos. 300, 312.) In the bankruptcy court's second order overruling the objection to the subpoena, Appellant Ronald Devine was ordered to comply with the subpoena within ten days. (Bankr. W.D.N.C. 18-30241, Doc. No. 312) Appellant Ronald Devine failed to produce any documentation related to the BRBRC trust that he himself established in August of 2018. (Doc. No. 1-1, p. 5.) Nearly two years after the Bankruptcy Court ordered compliance, Appellee learned of the BRBRC Trust through his own efforts and issued a subpoena *duces tecum* to the BRBRC Trust. (Doc. No. 1-3, p. 13.) Unsurprisingly, this too was ignored by Appellant Ronald Devine and the trust. (Id.) This ultimately resulted in "substantial delay associated with discovering this hidden trust and additional and unnecessary legal fees associated

7

with attempting to obtain this information multiple times from other sources." (Doc. No. 8, p. 33 n.12.)

Based on these facts, it is clear the bankruptcy court did not abuse its discretion in holding Appellant Ronald Devine in civil contempt, especially seeing as the bankruptcy court levied no sanction against Appellant Ronald Devine at that time.[2] In fact, a *de novo* review of the record in this case establishes by clear and convincing evidence: (1) Appellants had actual or constructive knowledge of the bankruptcy court's valid orders; (2) the orders were in Appellee's favor; (3) Appellants violated the orders with knowledge; and (4) Appellee suffered harm as a result. Accordingly, this Court affirms the Contempt Order of the bankruptcy court.

**B.     Order Granting Appellee's Motion for Protective Order and Denying Appellants' Motion to Compel**

Appellants noticed appeal of the bankruptcy court's Order Granting Appellee's Motion for Protective Order and Denying Appellants' Motion to Compel. (Doc. No. 1, p. 2.) However, Appellants raised no arguments in the briefings before this Court regarding the order. Therefore, the Court affirms the order of the Bankruptcy Court. See In re Lewis, 611 Fed. App'x 134, 137 (4th Cir. 2015); see also In re Wallace & Gale Co., 385 F.3d 820, 835 (4th Cir. 2004) (holding failure to raise argument before district court on appeal from bankruptcy court's ruling results in waiver of argument "absent exceptional circumstances").

---

[2] Appellee asked the bankruptcy court to enter default judgment against Appellant Ronald Devine, but the bankruptcy court declined to do so finding it "not warranted presently in this case under Fourth Circuit law". (Doc. No. 1-1, p. 8 n.5.) The Bankruptcy Court did, however, explicitly warn Appellants that:
> [W]e are serious, and this is going to get a lot worse before it gets better if there is not an attempt to make discovery . . . it's time to get serious about making discovery fully, completely and within the rules . . . we are not going to play a game of hide the ball. [Appellant Ronald Devine] will end up being *defaulted* and maybe some other Defendants with him if that's the way we're going to approach this.

(Doc. No. 9, p. 48–49 (emphasis added).)

8

Case 3:23-cv-00001-FDW   Document 12   Filed 03/05/24   Page 8 of 17

**C.     Order Granting Appellee's Renewed Motion to Compel and Imposing Sanctions, Including Striking Appellants' Answer and Entering Default Judgment**

A "court abuses its discretion when its conclusion is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." In re Jemsek Clinic, 850 F.3d 150, 156 (4th Cir. 2017) (internal quotation marks omitted). Rule 37 of the Federal Rules of Civil Procedure allows a court to issue sanctions against a party when that party disregards its discovery obligations or fails to comply with a court order. Fed. R. Civ. P. 37(b)(2)(A). In pertinent part, a court can impose a sanction by "striking a pleading in whole or in part; . . . [and] rendering a default judgment against the disobedient party". Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi). "The [bankruptcy] court's finding that [a party] deliberately disregarded [a] pre-trial order is a factual finding of fault . . . that can be overturned by this court only if clearly erroneous." Rabb v. Amatex Corp., 769 F.2d 996, 1000 (4th Cir. 1985); see also Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous."). It is well established that a federal court may wield its inherent sanctioning powers "when a party 'shows bad faith by delaying for disrupting the litigation or by hampering enforcement of a court order.'" Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991) (quoting Hutto v. Finney, 437 U.S. 678, 689 n.14 (1978)).

In this case, the bankruptcy court determined on at least three occasions "[Appellants] have failed to make discovery, by failing to: (a) fully answer the identified interrogatories, and (b) produce all responsive documents that are within the [Appellants'] possession, custody, or control." (Doc. No. 1-3, p. 25–26.) In a comprehensive 70-page Order, the Bankruptcy Court dedicated a weighty portion to outlining Appellants most significant discovery "failures", including: (1) "None of the Discovery Responses, Original or Amended, [were] Properly Verified;" (2) "The [Appellants] Failed to Meet the Discovery Order Deadline: Some were Late,

Other [Appellants] Failed to File amended Discovery Responses, as Required by the Discovery Order;" (3) "The [Appellants] Amended Discovery Responses to the Identified Interrogatories were Incomplete and Inadequate;"[3] and (4) "The [Appellants'] Amended Document productions also failed to comply with the Discovery Order."[4] (Doc. No. 1-3, p. 26–41.) In response, Appellants claimed the documents either did not exist or were not available. In the Sanctions Order, the bankruptcy court surmised:

> It is hard to imagine that a previously successful businessman like Ron Devine and his corporations could lack such a wide range of documents that businesses and business people normally possess . . .
>
> Certainly, some [Appellants] might not possess certain documents, but it is incredible that the voids could run across the board to every single [Appellant] and to almost every type of relevant documentation. It does not help that the defendants in the other Related Cases are making identical assertions. The odds of fifteen different parties lacking so much business documentation are astronomically long.
>
> Further . . . there is a track record of improper behavior in this case by [Appellants] that cautions against relying on their unsupported certifications. From improperly expending cash collateral without authorization; to operating a race car without insurance in contravention of the Operating Order and 11 U.S.C. Section 1112(b)(4)(c); to converting sponsorship money into stock in a startup company that has long since failed; to filing a false proof of claim; to repeatedly attempting to represent others (often incorporated entities) in court, Ron Devine has repeatedly violated the Bankruptcy laws and rules, and not a few orders.

(Doc. No. 1-3, p. 42–43.) Accordingly, the bankruptcy court's finding that Appellants violated its discovery orders is not clearly erroneous. Appellants undoubtedly undermined

---

[3] Examples of incompleteness or inadequacies include undisclosed bank accounts, undisclosed entities, incomplete disclosure of bank account information, nondisclosure of alleged loans to debtor, and failure to disclose details of the Ron Devine debt assumption transactions. (Doc. No. 1-3, p. 29–34.)

[4] Examples of failures to comply for documents that were produced include lateness, confusing/mislabeled/duplicate production, production did not correspond to document requests, documents were not produced as kept in the ordinary course, heavily redacted documents, and production of newly created documents. (Doc. No. 1-3, p. 34–38.) Examples of documents that were not produced include tax returns, bank account records, accounting records, corporate records, loan documents and ledgers, communications regarding inter Appellant transfers, communications regarding Debtor's transfers to Appellants, communications regarding the alleged loans, communications regarding the Ron Devine debt assumption transactions, and no email accounts and very few emails. (Doc. No. 1-3, p. 39–40.)

the integrity of the judicial process and wasted resources of the court through their numerous failures to comply with the bankruptcy court's discovery orders.

Even when a court properly concludes sanctions are warranted, it abuses its discretion when it imposes sanctions disproportionate to the severity of a party's misconduct. United States v. Rhynes, 218 F.3d 310, 321–22 (4th Cir. 2000). Dismissing an action with prejudice is "the most extreme sanction", appropriate only in the most egregious cases. See United States v. Shaffer, 11 F.3d 450, 462 (4th Cir. 1993). "When the sanction involved is judgment by default, the [bankruptcy] court's 'range of discretion is more narrow' because the [bankruptcy] court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court." Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989). To balance those competing interests, the Fourth Circuit has instructed courts to consider the following Wilson v. Volkswagen of America, Inc., 561 F.2d 494 (4th Cir. 1977) factors in determining whether to sanction a party with default judgment[5]: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." Id. at 503–05.

As for bad faith, the bankruptcy court found Appellants engaged in a "pattern of bad faith" through their numerous failures to make discovery, failure to correct discovery deficiencies, and false responses to discovery. (Doc. No. 1-3, p. 63.) Because Appellants "demonstrate[d] a continued pattern of discovery abuse that we simply cannot chalk up to

---

[5] Appellants argue the Wilson factors are "no longer current precedent." (Doc. No. 5, p. 16.) This Court disagrees. The Fourth Circuit recently applied the Wilson factors in a published opinion to determine whether a district court's sanction of default judgment was proper. See Mey v. Phillips, 71 F.4th 203, 218 (4th Cir. 2023). Though the bankruptcy court cited Mutual Federal Savings and Loan Association v. Richards & Associates, Inc., the bankruptcy court applied the correct four-factor test. (Doc. No. 1-3, p. 62.)

11

inadvertence or mistake," the bankruptcy court's finding of bad faith was not clearly erroneous. See Mey, 71 F.4th at 220.

The second factor of prejudice requires consideration of "the amount of prejudice [the noncomplying party] caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce." Richards, 872 F.2d at 92. The bankruptcy court found Appellants caused Appellee to be deprived of the opportunity to follow up on information and the ability to incorporate the information into his litigation strategy. Additionally, the bankruptcy court determined the failures of Appellants "has greatly delayed the resolution of these adversary proceedings and . . . the bankruptcy estate has incurred sizeable legal fees and costs associated with [Appellants'] failures to answer discovery, to comply with the rules of procedure, and to follow court orders." (Doc. No. 1-3, p. 64.) In terms of the materiality of the evidence, the Bankruptcy Court found the withheld evidence to be "essential to this litigation":

> These matters are material to whether the Transfers to these [Appellants] are avoidable; to whether the Devines have breached fiduciary duties owed to BK Racing's creditors; to whether the [Appellants] have engaged in unfair trade practices; and to whether the corporate veil should be pierced and the [Appellants] held liable as alter egos for the BK Racing creditor claims.

(Id.) Thus, the bankruptcy court's finding of prejudice to Appellees was not clearly erroneous because the evidence withheld was material and Appellants denied Appellee of the opportunity for a fair trial.

As for needing deterrence, the bankruptcy court determined a strong need for deterrence existed under these circumstances. Importantly, "[t]he Devines voluntarily placed BK Racing into bankruptcy" and "assumed the obligations of a debtor under Code Section 521, et seq. and the transparency demanded by the bankruptcy laws." (Doc. No. 1-3, p. 65.) As this Court has previously noted, the bankruptcy court thoroughly examined the full scope of Appellants' discovery misconduct. In doing so, the bankruptcy court found:

12

> If Smith, or any trustee, is forced to come to court multiple times—as has been this case and in the BK Racing case as a whole—and spend hundreds of thousands of dollars to obtain information to insiders' and affiliates' dealings and transactions with the Debtor, the bankruptcy case quickly becomes untenable and serves as a vehicle for fraud.

(Doc. No. 1-3, p. 65–66.) Early in the bankruptcy process, Appellant Ronald Devine stated his clear intention to "let the lawyers fight forever" and his "repeated patterns of delay, obfuscation and noncompliance" align with that intent. (Doc. No. 1-3, p. 66.) Appellants were given ample opportunities to comply with the discovery orders and to avoid sanctions. Furthermore, Appellants were expressly warned and put on notice the consequences of their actions could include entry of default judgment. (Doc. No. 9, p. 48–49.) As the bankruptcy court aptly concluded, such conduct must be stopped to "deter current and future litigants from engaging in this type of vexatious and obstreperous conduct" and to "protect and preserve the judicial process, court resources, and the integrity of the bankruptcy system." (Id.) Therefore, the bankruptcy court's finding of a high need for deterrence of this sort of noncompliance was not clearly erroneous.

The final Wilson factor requires a court to consider the effectiveness of less drastic sanctions prior to imposing default judgment. As with each preceding factor, the bankruptcy court properly considered other sanctions. Appellant Ronald Devine was held in civil contempt after failing to make Rule 2004 discovery. (Doc. No. 1-3, p. 67.) Then, on three separate occasions, the bankruptcy court ordered Appellants to make discovery. (Id.) Each order and subsequent warning were ignored. (Id.) The bankruptcy court could not expect a different result should it have entered even more orders compelling discovery. Similarly, even though monetary sanctions were imposed, they were unlikely to remedy the situation due to the employment status of the individual Appellants, the at least $3.5 million dollars of unpaid judgments and federal tax liens already imposed, and the corporate Appellants' lack of assets. (Id.) Furthermore, the imposition of an evidentiary bar would also fail to be effective. Appellants intended to rely on the parole testimony

13

of participants as opposed to documentary evidence. (Doc. No. 1-3, p. 68.) Therefore, preclusion of information and documents not previously produced in discovery would have limited if any effect on Appellants. As the bankruptcy court correctly concluded, Appellee maintains the burden on most claims and is severely disadvantaged without discovery. (Id.) Accordingly, the bankruptcy court's finding of default judgment as an appropriate sanction was not clearly erroneous.

Appellants argue the bankruptcy court abused its discretion by imposing an overly severe sanction because "[t]he sheer size of the judgment is prohibitive for a default sanction." (Doc. No. 5, p. 14.) In support, Appellants point to a Fourth Circuit case finding a bankruptcy court's imposition of default for a claim valued at over $10 million to be an excessive sanction. See In re Jemsek Clinic, P.A., 850 F.3d 150, 158–59 (4th Cir. 2017). However, the Fourth Circuit did not find the sanction of default excessive due to the size of the judgment. Instead, unlike in this case, the Fourth Circuit determined the action warranting sanctions caused no harm or prejudice to the opposing party and there was no connection between the misconduct and claims. Id. at 159. Thus, the bankruptcy court did not abuse its discretion by imposing the sanction of default judgment in this case.

Appellants also argue the bankruptcy court erred by piercing the corporate veil and not considering the Appellants individually. Generally, the decision to pierce a corporate veil—exposing those behind it to liability—is one taken cautiously. See DeWitt Truck Brokers v. W. Ray Flemming Fruit Co., 540 F.2d 681, 685 (4th Cir. 1976). When a "corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities . . . the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person." Henderson v. Sec. Mortg. & Fin. Co., 160 S.E.2d 39 (1968). "Whether the corporate veil should be pieced is necessarily a factual inquiry to be conducted on a

14

case-by-case basis." Keffer v. H.K. Porter Co., Inc., 872 F.2d 60, 65 (4th Cir. 1989). The Fourth Circuit has identified the following factors as supporting piercing the veil: gross undercapitalization of the subservient corporation; failure to observe corporate formalities; nonpayment of dividends; siphoning of the corporation's funds by the dominant corporation; non-functioning of officers and directors; absence of corporate records; and the fact that the corporation is merely a facade for the operation of the dominant stockholder or stockholders. DeWitt Truck Brokers, 540 F.2d at 685–87.

The bankruptcy court properly identified and concentrated on several of the relevant factors in finding "the twelve are but a married couple (the Devines), their six wholly owned corporate entities and four family trusts." (Doc. No. 1-3, p. 23.) The bankruptcy court explained the corporate entities are defunct, lack employees or operations, and possess no material assets. (Id.) In fact, the Bankruptcy Court noted some of the corporations had never had any employees or operations serving, rather, as "holding companies for specific Ron Devine business ventures or specified assets." (Id.) The Bankruptcy Court determined the Devines—as the signatories or controllers of the corporate bank accounts and as the officers, director, trustees, or owners of the corporations[6]—caused the corporate Appellants to pay expenses and debts of other corporate Appellants as well as pay the personal expenses of the Devines from the corporate accounts. (Id.) Similarly, the corporate Appellants guaranteed the debts of the Devines and other insiders and pledged assets to secure loans for the Devines or other corporate Appellants. (Id.) As further incompliance with corporate formalities, the bankruptcy court also noted Appellants' failure to keep accurate and complete corporate records, financial records, and shareholder minutes, including records of

---

[6] In fact, the corporate Appellants "either had no other officers, directors or trustees or no properly functioning officers, directors, or trustees to oversee the Devines' actions." (Doc. No. 1-3, p. 24.)

15

substantial amounts of money transferred between the individual and corporate Appellants. (Doc. No. 1-3, p. 24.)

After review of the record, this Court concludes the bankruptcy court's findings are not clearly erroneous.[7] "This case patently presents a blending of the very factors which courts have regarded as justifying a disregard of the corporate entity in furtherance of basic and fundamental fairness." DeWitt Truck Brokers, 540 F.2d at 689.

**D.     Judgment**

"If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, . . ." then a judgment "must [be] enter[ed] . . . for that amount and costs against a defendant who has been defaulted." Fed. R. Civ. P. 55(b)(1). After the bankruptcy court's entry of the Default Order, Appellee filed a Motion for Entry of Default arguing the amount sought was for a sum certain. On December 6, 2022, the bankruptcy court held a hearing during which counsel for Appellants informed the bankruptcy court they had agreed to a sum amount for the judgment. (Doc. No. 9, p. 70–71.) Now for the first time on appeal, Appellants argue that the sum is not certain and the complaint failed to plead fraud with the particularity required under Federal Rule 9. These issues are not properly before the Court. See Williams v. Lynch, 611 Fed. App'x 134, 137 (4th Cir. 2015); Lynch v. Mascini Holdings Ltd, 792 Fed. App'x 99, 102 (2d Cir. 2019) (noting "failure to raise an argument in bankruptcy court constitutes waiver, even if the argument was subsequently raised in the district court").

---

[7] Appellants argue due process requires an adversarial proceeding to make findings of fact. In support, Appellants cite two inapplicable cases. In Life Technologies Corporation v. Govindaraj, the Fourth Circuit found a *non-party* to the suit could not be held liable through the alter ego doctrine without meaningful notice. 931 F.3d 259, 265 (4th Cir. 2019). Similarly, the quote Appellants provide from Flame S.A. v. Freight Bulk Pte. Ltd. stating "[a] fair trial in a fair tribunal is a basic requirement of due process" was used by the Fourth Circuit when discussing judicial prejudice with no relation to piercing the corporate veil. 807 F.3d 572, 591 (4th Cir. 2015).

**IT IS THEREFORE ORDERED** that the Bankruptcy Court's order

1. holding Appellant Ronald Devine in civil contempt is AFFIRMED;

2. granting Appellee's motion for protective order and denying Appellants' motion to compel is AFFIRMED;

3. granting Appellee's renewed motion to compel and imposing sanctions is AFFIRMED; and

4. entering judgment against Appellants is AFFIRMED.

**IT IS SO ORDERED.**

Signed: March 4, 2024

_____
Frank D. Whitney
United States District Judge